# 25-1963-cv(L), 25-1964-cv(CON)

# United States Court of Appeals

### for the

# Second Circuit

———————————◆———————————

COUNTY OF ROCKLAND, EDWIN J. DAY, in his official capacity as
County Executive, LEGISLATURE OF THE COUNTY OF ROCKLAND,
STEVEN M. NEUHAUS, individually and in his official capacity as County
Executive, COUNTY OF ORANGE,

*Plaintiffs-Appellants,*

– v. –

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,
METROPOLITAN TRANSPORTATION AUTHORITY,

*Defendants-Appellees.*

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS
## COUNTY OF ROCKLAND, EDWIN J. DAY,
### in his official capacity as County Executive, and
## LEGISLATURE OF THE COUNTY OF ROCKLAND

McGOWAN HARRINGTON PARISI PLLC
*Attorneys for Plaintiffs-Appellants*
*County of Rockland, Edwin J. Day,*
*in his official capacity as County*
*Executive, and Legislature of the*
*County of Rockland*
222 North Main Street
New City, New York 10956
(845) 323-4940

CP COUNSEL PRESS    (800) 4-APPEAL • (385339)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF JURISDICTION....................................................2

STATEMENT OF ISSUES PRESENTED............................................2

STATEMENT OF THE CASE..............................................................2

STANDARD OF REVIEW ...................................................................3

ARGUMENT ........................................................................................4

     POINT I

     THE COMPLAINT ALLEGED SUFFICIENT PLAUSIBLE
     FACTS ON EACH OF ITS CAUSES OF ACTION TO SURVIVE
     A MOTION PURSUANT TO FRCP § 12(B)(6)............................4

        A.    The County's First Cause of Action, sounding in Equal
              Protection of the Laws under the 14th Amendment ............................5

        B.    The County's Second Cause of Action, sounding in equity
              and seeking an injunction directing the Defendants-
              Appellants to complete a study required by law .................................12

        C.    The County's Third Cause of Action, sounding in the Eighth
              Amendment prohibition on excessive fines .......................................13

        D.    The County's Fourth Cause of Action, seeking a declaration
              that the toll in fact constitutes a tax, is properly pled .........................17

             1.    A prima facie case that the charge is a tax and not a fee
                     has been alleged in the Amended Complaint ...........................17

             2.    The concept of the Integrated Transportation System
                     should be abandoned by the Court.............................................21

     POINT II

     THE PLAINITFF-APRELLANT SHOULD NOT BE
     PRECLUDED FROM AMENDING ITS COMPLAINT ............................24

CONCLUSION....................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Trucking Ass'ns, Inc. v. R.I. Turnpike and Bridge Auth.*,
    123 F.4th 27, 2024 U.S. App. LEXIS 30920,
    2024 WL 5001908 (1st Cir. Dec. 6, 2024)............................................................22

*Angus Partners LLC v. Walder*,
    *52 F.Supp.3d 546 (S.D. N.Y. 2014)* ....................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................4

*Ass'n for Accessible Meds. v. James*,
    974 F.3d 216 (2d Cir. 2020) ...........................................................18

*Attorney Gen. of N.Y. v. Soto-Lopez*,
    476 U.S. 898 (1986) ..........................................................................8

*Austin v. United States*,
    509 U.S. 602, 113 S. Ct. 2801 (1993) ...............................................14

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
    706 F. Supp. 264 (S.D.N.Y. 1989).....................................................22

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
    887 F.2d 417 (2d Cir. 1989) .............................................................22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................4, 9-10

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
    567 F.3d 79 (2d Cir. 2009) ..........................................................20-21

*Cella v. Suffolk Cty.*,
    220 A.D.3d 911 (2d Dept. 2023)........................................................24

*Chan v. United States DOT*,
    No. 23-cv-10365 (LJL),
    2024 U.S. Dist. LEXIS 231658 (S.D.N.Y. Dec. 23, 2024)................................22

*Chen v. Major League Baseball Props., Inc.*,
    798 F.3d 72 (2d Cir. 2015) ............................................................3

*F.S. Royster Guano Co. v. Virginia*,
253 U.S. 412 (1920) ............................................................................7

*Foman v. Davis*,
371 U.S. 178, 83 S. Ct. 227 (1962) ....................................................25

*Janes v. Triborough Bridge & Tunnel Auth.*,
774 F.3d 1052 (2d Cir. 2014) ...........................................................22

*Matter of Walton v. N.Y. State Dep't of Corr. Servs.*,
13 N.Y.3d 475 (2009) ........................................................................18

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ........................................................5, 10

*Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*,
838 F.Supp. 718 (E.D.N.Y. 1993)......................................................22

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ................................................................3

*Nw. Airlines, Inc. v. Cty. of Kent*,
510 U.S. 355 (1994) .......................................................................9, 12

*Plyler v. Doe*,
457 U.S. 202 (1982) .............................................................................7

*Romer v. Evans*,
517 U.S. 620 (1996) .............................................................................6

*Suffolk Cty. Builders Asso. v. Cty. of Suffolk*,
46 N.Y.2d 613 (1979)........................................................................18

*Taylor v. Vt. Dep't of Educ.*,
313 F.3d 768 (2d Cir. 2002) ................................................................5

*Tyler v. Hennepin County*,
598 U.S. 631 (2023) ...........................................................................16

*United States v. Bajakajian*,
524 U.S. 321 (1998) ..................................................................... 14, 16

*United States v. Sperry Corp.*,
493 U.S. 52 (1989) .................................................................. 18, 21, 23

*United States v. United States Shoe Corp.*,
523 U.S. 360, 118 S. Ct. 1290 (1998) ...............................................23

iii

*Zobel v. Williams*,
  457 U.S. 55 (1982) ................................................................................8

**Statutes & Other Authorities:**

U.S. Const. Amend. VIII ..........................................................................13

U.S. Const. Amend. XIV ............................................................................5

28 U.S.C. § 1291 ........................................................................................2

28 U.S.C. § 1331 ........................................................................................2

28 U.S.C. § 1343(a)(3) ..............................................................................2

28 U.S.C. § 1367 ........................................................................................2

28 U.S.C. § 2201 ........................................................................................2

28 U.S.C. § 2202 ........................................................................................2

28 U.S.C.S. § 1341 ....................................................................................17

Fed. R. App. P. 3 ........................................................................................2

Fed. R. App. P. 12(b)(6) ..................................................................3, 4, 5, 9

Fed. R. Civ. P. 8 ........................................................................................4

Fed. R. Civ. P. 8(a)(2) ...........................................................................5, 9

Fed. R. Civ. P. 15(a) ................................................................................25

Fed. R. Civ. P. 65 .................................................................................2, 13

N.Y. Pub. Auth. Law § 553-k(3) ...............................................................12

NYS VTL § 1704 .......................................................................................14

NYS VTL Article 44-c................................................................................2

## PRELIMINARY STATEMENT

Appellants the County of Rockland, Rockland County Executive Edwin J. Day, and the Rockland County Legislature (together, "Rockland" or "the County" respectfully appeal from the district court's July 14, 2025 Order granting the motion to dismiss filed by Appellees Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority (collectively, the "MTA").

On a motion to dismiss, courts must accept all well-pleaded factual allegations as true and determine whether the complaint states a claim to relief that is plausible on its face. The County's Amended Complaint meets this standard, setting forth sufficient factual allegations to establish each element of the following claims:

- Violation of the Equal Protection Clause;

- Failure to comply with the legally mandated Traffic Mobility Review;

- Violation of the Eighth Amendment prohibition on excessive punishments; and

- Violation of State law prohibiting the imposition of an unauthorized tax, implicating the constitutional right to travel through the public roadways.

The motion court's dismissal of each of these claims improperly imposed a heightened factual burden on Plaintiffs-Appellants.

1

Accordingly, Plaintiffs-Appellants respectfully request that this Court reverse the motion court's dismissal Order and remand the case for discovery and further proceedings.

## STATEMENT OF JURISDICTION

This is an appeal from the July 14, 2025 grant of MTA's Motion to Dismiss. The district court (Seibel, J., S.D.N.Y.) has subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1367, 2201 & 2202, and Rule 65 of the Federal Rules of Civil Procedure. The Second Circuit Court of Appeals has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 and Rule 3 of the Federal Rules of Appellate Procedure.

## STATEMENT OF ISSUES PRESENTED

The issue presented by this appeal is whether the district court erred in granting the underlying motion to dismiss despite the Amended Complaint alleging sufficient facts to establish each element of Plaintiffs'-Appellants' claims.

## STATEMENT OF THE CASE

In 2019 the New York State Legislature enacted New York State Vehicle and Traffic Law (NYS VTL) Article 44-c, which authorized the Triborough Bridge and

Tunnel Authority to impose tolls for travel within the City of New York by establishing a "central business district tolling program." (A-18, para. 16). The tolling under this program began on January 5, 2025.

Plaintiffs-Appellants filed their initial Complaint on March 26, 2024 and an Amended Complaint on May 13, 2024. (A-15). Following the moving court's denial of the County's motion for a preliminary injunction, the MTA filed the underlying motion to dismiss. (A-45). This appeal followed.

## STANDARD OF REVIEW

The standard of review on the appeal of a motion to dismiss is a *de novo* review of the record and law. "We review *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015); *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230 (2d Cir. 2016).

## ARGUMENT

## POINT I

## THE COMPLAINT ALLEGED SUFFICIENT PLAUSIBLE FACTS ON EACH OF ITS CAUSES OF ACTION TO SURVIVE A MOTION PURSUANT TO FRCP § 12(B)(6)

As correctly held by the motion court,

> "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, […] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

> In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than

4

the mere possibility of misconduct, the complaint has alleged –
but it has not 'show[n]' – 'that the pleader is entitled to relief.'"
(quoting Fed. R. Civ. P. 8(a)(2)).

(A-93-94).

As such, the court's review must be "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

Here, Plaintiffs-Appellants' Amended Complaint (A-15) contains sufficient factual allegations to plausibly state the claims asserted.

### A. The County's First Cause of Action, sounding in Equal Protection of the Laws under the 14th Amendment

Plaintiffs'-Appellants' First Claim alleges sufficient facts to establish that Defendants-Appellees' congestion pricing scheme violates the Equal Protection Clause of the 14th Amendment. The tolling program both infringes upon the fundamental right to travel and fails even the deferential rational basis review applicable to laws not implicating a suspect class or fundamental right. The County's Amended Complaint (A-15) alleges facts sufficient to meet the standard under Rule 12(b)(6), and the motion court's decision to dismiss this claim should be reversed.

Under *Romer v. Evans*, 517 U.S. 620, 631 (1996), where a law neither burdens a fundamental right nor targets a suspect class, it must bear a rational relationship to a legitimate governmental purpose. However, the classifications created by the MTA's tolling scheme do not satisfy even this minimal level of scrutiny.

The Amended Complaint identifies two primary classifications: (1) drivers entering the Central Business District (CBD) from outside its borders, who are subject to its toll; and (2) drivers who remain entirely within the CBD, who are exempt from the toll. (A-23, paras. 46 to 53 generally). A separate but related irrational classification exists between drivers who remain in the CBD for only a short period versus those who remain on CBD roadways for extended periods, both of whom are charged the same toll. Id.

There is no meaningful difference between these classes. All are the owners of vehicles ultimately driving within the CBD. All ostensibly add to the congestion and pollution the tolling scheme purports to reduce. Yet only some are burdened by the toll. For 'origin of the trip' drivers, one suffers deterrence and must pay a toll, while the other does not. For the 'short-trip vs. long-trip drivers', one pays the nine-dollar toll to be on the CBD roadways for a few minutes, while the other pays the nine-dollar toll for what may amount to hours or even days of driving.

The stated purpose of the toll, to reduce congestion and pollution caused by the operation of vehicles in the CBD (A-18, para. 18), is not served by a scheme

6

that exempts drivers who garage or operate exclusively within the CBD, despite those vehicles contributing equally or more to congestion and pollution within CBD. (A-19-23, paras. 21, 22, 29 & 47-54). The Amended Complaint alleges that the classes of persons against whom the deterrence applies is not equal or rational (A-23-24, paras. 46-54), and that there is no conceivable difference between those drivers. (A-24 at 55-56).

The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982) citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). The system implemented by the MTA here discriminates between these classes of persons with no rational basis. The toll, charged only at the border of the CBD, is irrational. It improperly achieves the purpose of the law by giving favorable treatment to some and disfavorable treatment to others, without any legitimate basis.[1]

---

[1] This problem is unique and not seen in common tolls for bridges and toll roads since everyone is treated the same in those cases. The persons who cross a bridge all use the same amount of roadway, the persons who use the thruway at various distances are charged by the length of road they travel. The CBD toll is unique in that it bears no relationship whatsoever to duration or distance of use. Moreover, no one uses a toll road for free simply because their trips begin and end within the tolled portion, thereby avoiding any toll booths.

The Amended Complaint also sets forth sufficient factual allegations to implicate the constitutional right to travel, a subspecies of Equal Protection.[2] A law implicates the right to travel "when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986).

Here, the Amended complaint alleges that one of the tolling schemes central purposes is to deter travel into and within the CBD (A-20-22, para. 31-44), that the law specifically intended to impede such travel (Id.), and that it penalizes the identified classes of persons described above, by charging tolls or significantly increasing their travel time. (A-20-21, paras. 20 and 37).

Whether the choice between a nine dollar per day toll or extra hours of commuting time is a "minor restriction" is not an issue of law suitable for resolution on a motion to dismiss. Particularly here, where the Amended Complaint specifically alleges that the burden is not minor. Instead, it is a factual

---

[2] While the "right to travel" is not an explicit right stated in the Constitution and its amendments, in this case, it is the equal protection aspect of the right that is at the forefront. See *Zobel v. Williams*, 457 U.S. 55, 60 n.6, (1982) ("Right to travel cases have examined, in equal protection terms, state distinctions between newcomers and longer term residents.")

determination that must be made by the trier of fact, or at a minimum on a full evidentiary record.

Further, even assuming the application of *Northwest test* to this case (A-96) was proper, the County has still pled sufficient facts to state a claim. Under *Northwest Airlines*, a fee is valid if it (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce. *Nw. Airlines, Inc. v. Cty. of Kent*, 510 U.S. 355, 369 (1994).

The Amended Complaint satisfies all three prongs. It is alleged that the toll is not tied to the use of the facilities (i.e. the roadways) (A-23-24, paras. 47 to 54); the toll is excessive in relation to the benefits concerned (Id. and A-26, paras. 68 to 70); and the scheme allows drivers within the CBD to operate vehicles toll free, while out of state drivers who enter the CBD are subject to the toll. (Id.).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl.*

9

*Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964 (2007). As such, the allegations of the Amended Complaint are sufficient to sustain the County's equal protection claims.

Further, the motion court erred by relying on facts outside the Amended Complaint. With all respect to the motion court's thoroughly analyzed and well researched Opinion and Order, it goes too far.[3] It considers many facts never alleged within the four corners of the Amended Complaint. See *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d at 191 ("review is limited to the facts as asserted within the four corners of the complaint").

The motion court's determination that the toll is a minor restriction is based on facts not in the Amended Complaint. (A-97). . On a motion to dismiss, consideration of extraneous matters such as whether New York City is "one of the most expensive cities in the world" and whether that offsets the nine-dollar toll (A-97-98), is improper. This is particularly so here, where the Amended Complaint alleges that the toll is excessive (A-26, paras. 63 to 70). The proper inquiry should have been whether the complaint contains sufficient allegations to support the claim.

---

[3] Perhaps as a result of following closely on the 'meritorious claim' analyses required by the immediately prior, preliminary injunction motion.

The opinion repeatedly relies upon factual assertions not found in the pleadings, including:

- Crossing credits to certain persons provided by the Program (A-100);

- Traffic patterns of the George Washington Bridge (Id.)

- The Program's low income credits (Id.);

- That the "Defendants have a legitimate local concern" in reducing toll burdens for some people (Id.)

- That Orange [and by logical extension Rockland] County residents will benefit from reduced congestion (A-102-103);

- That none of the funds will be used for purposes outside the MTA Integrated Transportation Network (A-102);

- That there will be reduced pollution (A-103).

- That there will be administrative efficiency (A-106);

- That the tolling scheme is "familiar to drivers" (Id.);

- That the Plaintiffs fail to propose other practical means to make the program valid (A-107); and

- That toll payers will benefit in fair relation to the fees or tolls paid.  (A-104).

Noe of these allegations are contained in the Amended Complaint.  Consideration of such extraneous material is improper at the motion to dismiss stage. The proper

11

inquiry is whether the Complaint contains plausible factual allegations, not whether the court agrees with them or whether the defendant asserts alternative facts.

Because the Amended Complaint plausibly alleges a violation of the Equal Protection Clause, including the fundamental right to travel, and because it states a claim under both traditional equal protection principles and the *Northwest Airlines* standard, the motion court's dismissal of this claim was in error. Its reliance on facts outside the pleadings further underscores the need for reversal. Accordingly, this Court should reverse the dismissal and remand for further proceedings and discovery.

> **B. *The County's Second Cause of Action, sounding in equity and seeking an injunction directing the Defendants-Appellants to complete a study required by law.***

Within the four corners of the Complaint, the County alleges that Defendants failed to analyze the impact of the CBD Tolling Program, as required by law. (A-25, para. 59-62). The enabling legislation mandates that the MTA establish a "traffic mobility review" board to recommend "a plan for credits, discounts, and/or exemptions for tolls paid on bridges and crossings which shall be informed by a traffic study associated with the impact of any such credits, discounts and/or exemptions on the recommended toll." N.Y. Pub. Auth. Law § 553-k(3).

The Amended Complaint specifically alleges that no analysis or recommendation was made with respect to the George Washington Bridge, a major

12

crossing frequently used by Rockland County residents. (A-25, para 59). Importantly, the law does not limit the required analysis to bridges or tunnels or other crossings that enter directly into the CBD.

Plaintiffs-Appellants respectfully ask the court to, exercising its equitable authority under FRCP § 65, enjoin MTA to perform the analysis required by the statute, an obligation the County alleges the traffic mobility review board failed to fulfill.

This claim is pled with sufficient particularity. The County has identified a specific and material omission: the absence of the statutorily required analysis concerning George Washington Bridge traffic and the potential toll credit. Beyond identifying this analytical gap, it would be unreasonable to require the County to prove a negative, i.e. the nonexistence of this analysis that, if performed, is solely within MTA's possession. Therefore, it is respectfully requested that the Court reverse the motion court's dismissal of the Second Cause of Action and remand for further proceedings.

C. *The County's Third Cause of Action, sounding in the Eighth Amendment prohibition on excessive fines.*

The Amended Complaint alleges that the CBD toll constitutes a punishment, and that the financial burden imposed is sufficiently significant to qualify as an excessive fine. (A-26, para. 63-70). The amount is not dispositive, where, as

13

alleged, its purpose is to deliberately punish individuals for using the public roadways within the CBD.  (Id.).

The Excessive Fines Clause of the Eighth Amendment limits the government's power to extract payments, whether in cash or in kind, "as *punishment* for some offense." *Austin v. United States*, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 2805 (1993) (emphasis in original).  "Deterrence, however, has traditionally been viewed as a goal of punishment."  *United States v. Bajakajian*, 524 U.S. 321, 329 (1998).

In this case a toll is imposed not for a service or use, but as a financial burden applied to the use of the public roadways, without any remedial return or connection to the damage incurred or the enforcement costs.  As alleged, the toll is imposed to generate at least $1 billion in net revenue annually to support the MTA's capital budget, not to recover costs related to road maintenance, enforcement or other related expenses.  See NYS VTL § 1704.

The Amended Complaint further alleges that none of the toll revenue is returned to the City of New York, which owns the tolled streets.  Instead, all funds are diverted to the MTA, a distinct government entity that does not own or operate the subject roadways.  The MTA is not an agency of the City of New York (A-26).  Yet, the funds are being used for capital projects by the MTA (A-20, para 27), underscoring the lack of any remedial effect or compensatory purpose.

14

Plaintiffs-Appellants respectfully submit that, unlike traditional tolls, where revenues are used to fund the maintenance or improvement of the infrastructure being tolled, this toll imposes a monetary burden that provides not corresponding benefit to the payor and serves no remedial function. As such, its only apparent purpose is punitive, to deter and penalize use of public roadways.

Further, the Amended Complaint alleges that the punishment does not "fit the crime." Driving on public highways, which have traditionally been free to use, has now been transformed into an activity subject to a significant penalty, but only for some. This disparity is particularly troubling given the flat nine-dollar charge for the average passenger vehicle, regardless of the duration, distance or frequency of use.

Consider the disparity among the following drivers: The individual who enters at 59th Street and Fifth Avenue, makes two right turns, and exits at 59th and Madison Avenue—using the roadways for only a brief moment; a driver who takes the untolled FDR Drive to the Brooklyn Bridge entrance into the CBD, parks in a nearby garage for eight hours, and later exits via the same brief route; or the commercial operator who travels repeatedly throughout the city, from 59th Street to Battery Park and back, making deliveries and occupying curb space throughout the day. Each of these imposes vastly different levels of impact on traffic, congestion and infrastructure, but all are charged identically. The scheme does not account for

15

usage, time or distance in a way that reflects actual impact, which underscores its arbitrary and punitive nature.

The motion court failed to consider that a government imposed financial penalty need not be linked to moral culpability in order to be punitive. As stated by Justice Gorsuch in his concurrence to *Tyler v. Hennepin County*, "[e]ven without emphasizing culpability, this Court has said a statutory scheme may still be punitive where it serves another "goal of punishment," such as "[d]eterrence." 598 U.S. 631, 649, (2023) citing *United States* v. *Bajakajian*, 524 U. S. 321, 329, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998).

The motion court's analysis is particularly apposite where, as here, the funds generated by the toll are received by a government entity that has no ownership interest in the tolled infrastructure and no remedial claim for its use. To the County's knowledge, no court has previously upheld such a scheme, where a tolling authority imposes a fee on infrastructure it neither owns nor maintains, and uses the revenue solely to fund unrelated capital projects. Dismissal of this novel and constitutionally significant claim, without the benefit of discovery or a fully developed record, is improper at the pleading stage. At a minimum, Plaintiffs-Appellants are entitled to test the factual basis and asserted justifications for the tolling scheme through discovery.

Based upon the foregoing, the Plaintiffs-Appellants have sufficiently alleged a violation of the Excessive Fines Clause. The toll operates as a punishment rather than a user fee, and its application is arbitrary, lacking any remedial connection to infrastructure use or impact. The motion court's dismissal of this claim was in error, and Plaintiffs-Appellants respectfully request that the Court reverse the dismissal and remand for further proceedings.

D. *The County's Fourth Cause of Action, seeking a declaration that the toll in fact constitutes a tax, is properly pled.*

1. *A* prima facie *case that the charge is a tax and not a fee has been alleged in the Amended Complaint*

Plaintiffs-Appellants seek to have the nine-dollar Congestion Pricing toll declared a tax. The allegations of the Amended Complaint support the contention that the charge to enter the CBD is not appropriately a fee, since its revenues are spent for the general benefit of all persons within the MTA's jurisdiction and cannot be particularized to some reasonable degree as a benefit for the person paying the fee.[4] Plaintiffs-Appellants further submit that, in this case, where the revenue

---

[4] It is understood that the Court's powers are limited by the Tax Injunction Act. 28 USCS § 1341. To the extent that relief may be granted by this Court, Plaintiff-Appellants seek a declaration that the nine-dollar toll is in fact a state tax. It is further understood that any relief from this state tax must be sought in State court.

generated goes to the benefit of the general public in the jurisdiction of the MTA, the charge is in fact a tax.

Courts have consistently applied a three-factor test to determine whether a charge constitutes a tax or a fee: (1) the nature of the entity imposing the assessment, (2) the population subject to the assessment, and (3) the ultimate allocation or use of the revenues generated by the assessment. *Ass'n for Accessible Meds. v. James*, 974 F.3d 216, 222 (2d Cir. 2020); see also *United States v. Sperry Corp.*, 493 U.S. 52, (1989) ("a reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services. A governmental body has an obvious interest in making those who specifically benefit from its services pay the cost." (internal quotations omitted)).

New York courts similarly draw a clear line. The Court of Appeals has held: "[a] tax is a charge that a government exacts from a citizen to defray the general costs of government unrelated to any particular benefit received by that citizen [who pays the charge]. . . . Municipalities and administrative agencies engaged in regulatory activity can assess fees that need not be legislatively authorized as long as the fees charged [are] reasonably necessary to the accomplishment of the regulatory program." *Matter of Walton v. N.Y. State Dep't of Corr. Servs.*, 13 N.Y.3d 475, 485 (2009) (internal quotations marks omitted); see also, *Suffolk Cty. Builders Asso. v. Cty. of Suffolk*, 46 N.Y.2d 613, 619 (1979) (". . . the power to enact fees may

18

be implied . . . [but] it must be regarded as circumscribed by a similarly implied limitation that the fees charged be reasonably necessary to the accomplishment of the regulatory program.").

Thus, for a fee to be valid, there must be a direct, individualized benefit to the payor and a reasonable relationship between the fee and the cost of the service provided.

With these factors in mind, it is respectfully asserted that the charge for the congestion toll is properly classified as a tax rather than a regulatory, user fee. As alleged in the Amended Complaint, this charge is collected to fund a general benefit to the entire community. (A-28, paras. 83 & 84). In this case, as alleged, the charge to vehicle owners entering the CBD is financing public transportation throughout the region. (A-19-20, paras. 24-28). Some persons who will benefit pay the toll while others who benefit will not. (A-22, paras. 42-44 and A-28-29, paras 85, 88 & 89).

The motion court's assessment that the charge does not support the general costs of government ignores the structure of the entities doing the charging. It is respectfully asserted that this analysis was incorrect because it did not consider the vast structure, powers and responsibilities of the MTA. The characterization that such a charge supports "only mass transit" (A-110) may be applicable to a county public transportation department that has limited power and function, but is not

19

suitable here, where the entity's entire overarching operation may be fairly considered to be public transportation, but its powers are far beyond merely owning subways and buses. The charge at issue is being collected by sprawling quasi-governmental entities with powers and budgets that far exceed that of most counties in the State.

The MTA is alleged to have police power, taxing authority, bonding authority, the power to buy and sell property establish parks, engage law enforcement for toll enforcement, i.e. the power to act as a full governmental entity. To characterize MTA as providing "only mass transit" understates the breadth of its authority. Simply put, the revenue generated by the CBD toll is general revenue of this quasi-government for the general benefit of the people within its jurisdiction, and it should be analyzed as such.

The County further notes that the issue is complex and fact laden. For example, this Court in Bridge*port & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, affirmed, noting the following:

> To determine whether the revenue from the Passenger Fee was unreasonably high compared to the benefits that the BPA provided to the ferry passengers, the District Court examined separately each activity of the BPA. The Court concluded that the following BPA activities benefitted ferry passengers: (1) construction and maintenance of a new ferry terminal building, (2) repair of the bulkhead of the Dock, (3) construction of the access road, (4) planning of the parking facility for ferry passengers, (5) security for the Dock, and (6) daily operations related to the ferry."

20

567 F.3d 79, 84 (2d Cir. 2009).

Here, no such analysis occurred, warranting reversal. The Amended Complaint identifies an alleged mismatch between those who pay and those who benefit and asserts that the revenue is used for general public purposes unrelated to any particularized benefit. These allegations are sufficient at the motion to dismiss stage and should not have been dismissed without the benefit of discovery.

Thus, Plaintiffs-Appellants have plausibly alleged that the CBD toll is a tax, not a regulatory fee. It is imposed by a quasi-governmental entity, applies broadly to the public, and funds general benefits throughout the MTA's jurisdiction. As such, the motion court's order should be reversed.

> 2. *The concept of the Integrated Transportation System should be abandoned by the Court.*

As discussed above, a crucial element of the fee versus tax analysis is whether the charge is a fair approximation of the cost of benefits supplied to the payor. See *United States v. Sperry Corp.*, 493 U.S. at 60.

Defendant-Appellees are expected to invoke the Integrated Transportation System (ITS) theory to argue that the congestion pricing toll satisfies the "reasonable relationship" test applicable to fees. However, the County respectfully submits that this theory, particularly in the context of the CBD tolling program, has been

stretched well beyond its original limits and should not be used to shield what is in substance a tax from judicial scrutiny.

The ITS concept appears to have originated in 1989 in *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 706 F. Supp. 264 (S.D.N.Y. 1989). Since then, courts have invoked the ITS theory sparingly and only in contexts involving tolls imposed on discrete infrastructure, primarily bridges and tunnels, to support the argument that the proceeds may permissibly support broader, interrelated transit infrastructure within the same transportation ecosystem.[5]

The ITS theory stands for the proposition that certain bridges, tunnels, roadways, public transit systems and commuter railways may "form an 'integrated, interdependent transportation system'" such that components of the integrated system bear a functional relationship to tolls charged in connection with other components. *Chan v. United States DOT*, No. 23-cv-10365 (LJL), 2024 U.S. Dist. LEXIS 231658 (S.D.N.Y. Dec. 23, 2024) (internal citations omitted).

---

[5] See *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 887 F.2d 417, 418 (2d Cir. 1989) (quoting and affirming *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 706 F. Supp. 264, 280 (S.D.N.Y. 1989)); *see, e.g., Janes v. Triborough Bridge & Tunnel Auth. ("Janes II")*, 774 F.3d 1052, 1055 & n.6 (2d Cir. 2014) (per curiam); *Angus Partners*, 52 F. Supp. 3d 546, 567 (SDNY 2014); *Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*, 838 F.Supp. 718, 725 (E.D.N.Y. 1993); *see also Am. Trucking Ass'ns, Inc. v. R.I. Turnpike and Bridge Auth.*, 123 F.4th 27, 2024 U.S. App. LEXIS 30920, 2024 WL 5001908, at *12 (1st Cir. Dec. 6, 2024).

The use of the ITS theory in this context is inconsistent with longstanding federal precedent concerning user fees and does not fit with Supreme Court precedent as well.  It is respectfully submitted that its use should be discontinued in favor of more conventional analysis.

We assert that under the more conventional definition, the CBD toll is as a matter of law, not a fee, and is thus a tax.  As opposed to the broad and relaxed association provided by the ITS theory analysis, it is respectfully submitted that this Court should engage in an analysis of the purpose, and value of fees versus their ultimate use.  At least some articulable relationship should exist between the person paying the charge and the services provided.  See *United States v. United States Shoe Corp.*, 523 U.S. 360, 369, 118 S. Ct. 1290, 1295 (1998) ("The value of export cargo, however, does not correlate reliably with the federal harbor services used or usable by the exporter."); and *United States v. Sperry Corp.*, 493 U.S. at 60 (fees should bear a reasonable relationship to the cost of the government service).

This misapplication of the ITS theory contravenes more traditional principles of fee jurisprudence.  As the Second Department recently emphasized:

> Fees cannot be charged to generate revenue or to offset the cost of other governmental functions.  Without the safeguard of a requirement that fees bear a relation to average costs, a [municipality] would be free to incur, in the individual case, not only necessary costs but also any which it, in its untrammeled discretion, might think desirable or convenient, no matter how oppressive or discouraging they might in fact be for applicants.

23

*Cella v. Suffolk Cty.*, 220 A.D.3d 911, 913 (2d Dept. 2023) (internal citations omitted).

The ITS framework, as applied here, eliminates this safeguard. By allowing general-purpose toll revenue to be redirected without any individual nexus to the payor, the ITS theory effectively converts fees into taxes, but without satisfying the constitutional and statutory requirements applicable to taxation.

Thus, the County respectfully requests that the Court reject its precedent permitting the ITS to substitute for actual correlation between the amount of a charge and the expense or benefit received by the person being charged, warranting reversal of the lower court's dismissal order.

## POINT II

## THE PLAINITFF-APRELLANT SHOULD
## NOT BE PRECLUDED FROM AMENDING ITS COMPLAINT

The motion court *sua sponte* has forbidden the Plaintiffs-Appellants leave to amend. We understand that leave was previously offered, in light of the Defendants'-Appellees' pre-motion to dismiss letter, and the Plaintiffs-Appellants do not seek to amend to respond to those particular points. But to forbid leave following this appeal on all grounds is unnecessary and, we assert, against the policy that leave to amend should be freely given, in the absence of undue delay, bad faith, repeated failure to cure deficiencies or any significant prejudice to the defendant as

24

reflected in FRCP § 15(a) and *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

## CONCLUSION

For all of the reasons set forth above, it is respectfully requested that the Court grant an order reversing the decision of the motion court with respect to each of the Plaintiffs'-Appellants' claims and permit the Plaintiffs-Appellants to amend the pleadings freely as allowed by law.

Dated: October 7, 2025

McGowan Harrington Parisi PLLC
222 North Main St.,
New City, New York 10956
*Counsel for the Appellants*

by: /s/ *Matthew G. Parisi*

Matthew G. Parisi
mparisi@mhp.law

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

   This brief contains 5,596 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:

   This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.

   /s/ *Matthew G. Parisi*

   Matthew G. Parisi