# 25-1963-cv(L), 25-1964-cv(CON)

## United States Court of Appeals
### *for the*
### Second Circuit

COUNTY OF ROCKLAND, EDWIN J. DAY, in his official capacity as County Executive, LEGISLATURE OF THE COUNTY OF ROCKLAND, STEVEN M. NEUHAUS, individually and in his official capacity as County Executive, COUNTY OF ORANGE,

*Plaintiffs-Appellants,*

– v. –

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

MARK A. CHERTOK
ELIZABETH KNAUER
SIVE, PAGET & RIESEL P.C.
560 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 421-2150

ROBERTA A. KAPLAN
D. BRANDON TRICE
MAXIMILIAN T. CREMA
THOMAS A. LLOYD
KAPLAN MARTIN LLP
1133 Avenue of the Americas,
   Suite 1500
New York, New York 10036
(212) 316-9500

*Attorneys for Defendants-Appellees*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................1

BACKGOUND .................................................................................3

    A.  The Central Business District Tolling Program ....................................3

    B.  Procedural History ..................................................................6

STANDARD OF REVIEW ....................................................................8

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT ................................................................................10

  I.  The Program does not violate the right to travel ......................................10

    A.  Strict scrutiny does not apply .................................................10

    B.  The Program satisfies *Northwest Airlines* .............................................12

  II.  The Program does not violate the Equal Protection or Due Process Clauses ..................................................................................15

  III. The Program's tolls are neither fines nor excessive ...................................18

  IV. The toll is not an unconstitutional tax........................................21

  V.  Rockland's request for injunctive relief is improper .................................25

  VI. It was not an abuse of discretion to deny Rockland leave to amend .........27

CONCLUSION ...............................................................................27

# TABLE OF AUTHORITIES

## CASES

*Angus Partners LLC v. Walder*,
52 F. Supp. 3d 546 (S.D.N.Y. 2014) ................................................. 13, 14, 15, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................8

*Ass'n for Accessible Meds. v. James*,
974 F.3d 216 (2d. Cir. 2020) ................................................................ 21, 22, 25

*Att'y Gen. of N.Y. v. Soto-Lopez*,
476 U.S. 898 (1986) .........................................................................................10

*Balintulo v. Ford Motor Co.*,
796 F.3d 160 (2d Cir. 2015) ...........................................................................9, 27

*Beatty v. Gilman*,
718 F. Supp. 3d 166 (D. Conn. 2024) ...............................................................19

*Bogle-Assegai v. Connecticut*,
470 F.3d 498 (2d Cir. 2006) ....................................................................... 10, 24

*Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*,
11 F.4th 55 (2d Cir. 2021) ...............................................................................4

*Brown v. N.Y.C. Transit Auth.*,
No. 22 Civ. 2949, 2024 WL 1347283 (S.D.N.Y. Mar. 29, 2024) .......................4

*Carey Transp., Inc. v. Triborough Bridge & Tunnel Auth.*,
38 N.Y.2d 545 (1976) .......................................................................................21

*Cella v. Suffolk Cnty.*,
220 A.D.3d 911 (2d Dept. 2023) .......................................................................24

*Chan v. U.S. Dep't of Transp.*,
782 F. Supp. 3d 39 (S.D.N.Y. 2025) ................................................................13

*Chan v. U.S. Dep't of Transp.*,
No. 23 Civ. 10365, 2024 WL 5199945 (S.D.N.Y. Dec. 23, 2024) .... 1, 23, 24, 26

ii

*Cnty. of Rockland v. Triborough Bridge & Tunnel Auth.*,
No. 24 Civ. 2285 (S.D.N.Y. Dec. 23, 2024)......................................................1

*Cnty. of Rockland v. Triborough Bridge & Tunnel Auth.*,
No. 24-3325 (2d Cir. 2024)..........................................................................7

*Doe v. U.S. Sec'y of Transp.*,
2018 WL 6411277 (S.D.N.Y. Dec. 4, 2018) ...............................................12

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
737 F.3d 228 (2d Cir. 2013)................................................................ 23, 25

*Gasparo v. City of N.Y.*,
16 F. Supp. 2d 198 (E.D.N.Y. 1998) .........................................................22

*Gov. Suppliers Consol. Serv. v. Bayh*,
975 F.2d 1267 (7th Cir.1992) ...................................................................23

*Gross v. Rell*,
585 F.3d 72 (2d Cir. 2009)........................................................................20

*Heller v. Doe*,
509 U.S. 312 (1993)..................................................................................16

*Jackson v. Scotts Co.*,
356 F. App'x 513 (2d Cir. 2009) ...............................................................26

*Janes v. Triborough Bridge & Tunnel Auth.*,
577 U.S. 914 (2015)..................................................................................11

*Janes v. Triborough Bridge & Tunnel Auth.*,
774 F.3d 1052 (2d Cir. 2014).....................................................................11

*Janes v. Triborough Bridge & Tunnel Auth.*,
977 F. Supp. 2d 320 (S.D.N.Y. 2013) ....................................... 11, 12, 13, 15

*In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993).........................................................................27

*Lynn v. McCormick*,
2017 WL 6507112 (S.D.N.Y. Dec. 18, 2017) ..............................................9

iii

*Lynn v. McCormick*,
 760 F. App'x 51 (2d Cir. 2019) ............................................................9

*Melrose Credit Union v. City of N.Y.*,
 247 F. Supp. 3d 356 (S.D.N.Y. 2017) .................................................18

*Melrose Credit Union v. City of N.Y.*,
 889 F.3d 40 (2d Cir. 2018)..................................................................18

*Muto v. CBS Corp.*,
 668 F.3d 53 (2d Cir. 2012)....................................................................8

*Neuhaus v. Triborough Bridge & Tunnel Auth.*,
 No. 24 Civ 3983 (S.D.N.Y. Dec. 23, 2024)...........................................1

*New Jersey v. Metro. Transp. Auth.*,
 No. 25-1033 (3d Cir. Jan. 4, 2025) ........................................................1

*New Jersey v. U.S. Dep't of Transp.*,
 No. 23 Civ 3885 (D.N.J. Jan. 3, 2025) ..................................................1

*Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*,
 510 U.S. 355 (1994)........................................................................2, 12

*Pers. Adm'r of Mass. v. Feeney*,
 442 U.S. 256 (1979)...............................................................................18

*PETA v. Giuliani*,
 105 F. Supp. 2d 294 (S.D.N.Y. 2000) ..................................................17

*Progressive Credit Union v. City of N.Y.*,
 889 F.3d 40 (2d Cir. 2018)..................................................................18

*Sands v. Manistee River Imp. Co.*,
 123 U.S. 288 (1887)...............................................................................21

*Sensational Smiles, LLC v. Mullen*,
 793 F.3d 281 (2d Cir. 2015)................................................................16

*Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*,
 737 F. Supp. 3d 195 (S.D.N.Y. 2024) ..................................................27

*Spina v. Dep't of Homeland Sec.*,
  470 F.3d 116 (2d Cir. 2006)...................................................................17

*Tamar v. Mind C.T.I., Ltd.*,
  723 F. Supp. 2d 546 (S.D.N.Y. 2010) ...............................................27

*Town of Hempstead v. Hochul*,
  No 450653-2025 (June 23, 2025) .......................................................26

*Town of Southold v. Town of E. Hampton*,
  477 F.3d 38 (2d Cir. 2007)............................................................ 10, 11

*Tyler v. Hennepin Cnty.*,
  598 U.S. 631 (2023)............................................................................20

*United States v. Amalfi*,
  47 F. 4th 114 (2d Cir. 2022) ..............................................................15

*United States v. An Antique Platter of Gold*,
  184 F.3d 131 (2d Cir. 1999)...............................................................19

*United States v. Sperry Corp.*,
  493 U.S. 52 (1989).............................................................................24

*United States v. U.S. Shoe Corp.*,
  523 U.S. 360 (1998)...........................................................................24

*United States v. Viloski*,
  814 F.3d 104 (2d Cir. 2016)......................................................... 19, 20

*USA Baseball v. City of N.Y.*,
  509 F. Supp. 2d 285 (S.D.N.Y. 2007) ...............................................17

*Walton v. N.Y. State Dep't of Corr. Servs.*,
  13 N.Y.3d 475 (2009) .........................................................................21

*Weisshaus v. Port Auth. of N.Y. & N.J.*,
  497 F. App'x 102 (2d Cir. 2012) .................................................. 10, 11

*Winston v. City of Syracuse*,
  887 F.3d 553 (2d Cir. 2018)...............................................................16

*Wirth v. City of Rochester*,
  2021 WL 3270512 (W.D.N.Y. July 30, 2021) ....................................................19

**STATUTES**

N.Y. Pub. Auth. Law § 1264 ...................................................................................22

N.Y. Veh. & Traf. Law § 1701 .............................................................................3, 24

N.Y. Veh. & Traf. Law § 1704 ............................................................................4, 19

N.Y. Veh. & Traf. Law § 1704-a........................................................... 4, 5, 19, 26

**OTHER AUTHORITIES**

"EA" to the Finding of No Significant Impact, Appendix A - Final Environmental
  Assessment,
  https://new.mta.info/project/CBDTP/environmental-assessment ........................5

Toll Rate Schedule,
  https://new.mta.info/document/138931 ...............................................................5

## **PRELIMINARY STATEMENT**

These appeals arise out of two of the many failed challenges to New York's Central Business District ("CBD") Tolling Program, also known as Congestion Relief Zone tolling or Congestion Pricing (the "Program"), which was passed by New York's elected representatives to address the City's longstanding congestion problems by tolling vehicles and then using that revenue to fund critical investments in mass transit infrastructure.[1]

In a thorough, 30-page decision, the district court (Seibel, J.) granted Defendants' omnibus motion to dismiss, concluding that Plaintiffs' constitutional and statutory arguments lack merit since the Program does not violate the right to travel, the due process or equal protection clauses, or the Eighth Amendment, and is not an unconstitutional tax under New York law. R.A. 87-116.[2] As the district court held, the Program does not infringe upon any fundamental right or rely on any suspect classification, and it is clearly rational because it reduces congestion and

---

[1] *See Chan v. U.S. Dep't of Transp.*, No. 23 Civ. 10365, 2024 WL 5199945, at *1 (S.D.N.Y. Dec. 23, 2024) (Liman, J.) ("*Chan I*"); *New Jersey v. Metro. Transp. Auth.*, No. 25-1033 (3d Cir. Jan. 4, 2025), ECF 9 (Bibas, J.); *New Jersey v. U.S. Dep't of Transp.*, No. 23 Civ. 3885 (D.N.J. Jan. 3, 2025), ECF 208 (Gordon, J.); *Cnty. of Rockland v. Triborough Bridge & Tunnel Auth.*, No. 24 Civ. 2285 (S.D.N.Y. Dec. 23, 2024), ECF 52 (Seibel, J.); *Neuhaus v. Triborough Bridge & Tunnel Auth.*, No. 24 Civ. 3983 (S.D.N.Y. Dec. 23, 2024), ECF 44 (Seibel, J.).

[2] Citations to "R.A." refer to pages of the Appendix for Plaintiffs-Appellants County of Rockland and Edwin J. Day (collectively, "Rockland"), No. 25-1963 (Dkt. No. 24.1), and to "Rockland Br." are to Rockland's Opening Brief, Dkt. No. 25.1. Citations to "O.A." refer to pages of the Appendix for Plaintiffs-Appellants Steven M. Neuhaus and County of Orange (collectively, "Orange"), No. 25-1964 (Dkt. No. 20.1), and to "Orange Br." are to Orange's Opening Brief, Dkt. No. 21.1.

funds much-needed maintenance and development of infrastructure operated by Defendant-Appellee Metropolitan Transportation Authority ("MTA").

While Plaintiffs-Appellants Rockland and Orange Counties contend that the district court committed legal error on each of these basic questions of law, the cursory nature of their briefing makes clear that the district court applied binding precedents and well-settled principles of law and logic to dismiss these cases. Indeed, Rockland and Orange not only fail to provide a cogent explanation of how their legal claims are supported by the alleged facts, but they barely engage with the district court's reasoning at all.

*First*, the Program does not violate Orange's right to travel. It is not subject to strict scrutiny since it involves only a "minor restriction" on travel (as Orange has conceded). And it easily satisfies the deferential, rational-basis test of *Northwest Airlines, Inc. v. County of Kent, Mich.*, 510 U.S. 355 (1994). No matter how many times they (Orange or Rockland) assert that their drivers receive no benefit from the Program's tolls, it doesn't change the obvious fact that reducing congestion in the CBD is a benefit to all drivers.

*Second*, Plaintiffs-Appellants' equal protection and due process claims fail because tolling drivers upon entry into the CBD is obviously rational. Indeed, Orange's argument that the New York State Legislature should have refrained from enacting the Program until the MTA gets "its financial house in order" is a political

2

argument, not a proper constitutional one. Orange Br. 12. And contrary to Rockland's assertion, Rockland Br. 10-11, the district court correctly based its decision on the record before it.

*Third*, Rockland's Eighth Amendment claim fails because the tolls are not punitive in nature—they are imposed pursuant to a New York statute for motorists entering the CBD. Rockland's contention that the Program's only purpose is "to deter and penalize use of public roadways," *id.*, is nonsensical since under that logic all the numerous and often higher bridge or tunnel tolls that commuters pay every day would also be considered unconstitutional.

*Finally*, the toll is not an unauthorized tax under New York law because it is paid only by vehicles entering the CBD, and its revenue is used to benefit the New York metropolitan area's integrated transportation network. A toll does not become a tax simply because it promotes the public good, Orange Br. 15, or because the MTA's operations extend beyond the subway system, Rockland Br. 20.

## BACKGOUND

### A.    The Central Business District Tolling Program

New York City ranks "third worst among cities in the world" for traffic. MTA Reform and Traffic Mobility Act (the "TMA"), N.Y. Veh. & Traf. Law § 1701 *et seq.* After decades of study and several stalled attempts to address this problem, the New York State Legislature passed the TMA in 2019. The legislative findings

3

recognize that traffic congestion in New York City results in "significant cost," is a "significant contributor to decreased air quality," and hurts residents, commuters, taxis, buses, and emergency vehicles alike. *Id.* The Legislature further observed that the underfunding of New York City's transit infrastructure has "a deleterious impact on the health, safety, and livelihood of commuters, tourists, resident New Yorkers" as well as "the economy of the state of New York," such that "a long-term and sustainable solution is necessary in order to ensure stable and reliable funding" for this "important mass transit asset." *Id.*

The TMA seeks to address these issues by authorizing and directing Defendant-Appellee Triborough Bridge and Tunnel Authority ("TBTA"), an MTA affiliate, to "establish the central business district tolling program," *id.* § 1704(1), and "to establish and charge variable tolls and fees for vehicles entering" the CBD, *id.* § 1704-a(1).[3] TBTA was further directed to "implement a plan for credits, discounts and/or exemptions for tolls paid on bridges and crossings informed by the recommendations of the traffic mobility review board," or TMRB, *id.* § 1704-a(3), an independent advisory body. All of the Program's revenues, less the costs of its operations, are dedicated to "the central business district tolling capital lockbox

---

[3] The TMA defines the CBD as the geographic area of Manhattan south and inclusive of 60th Street, but not including the FDR Drive, the West Side Highway, the Battery Park underpass, and "any surface roadway portion of the Hugh L. Carey Tunnel connecting to West St." N.Y. Veh. & Traf. Law § 1704(2).

4

fund" and must "fund fifteen billion dollars for capital projects for the 2020 to 2024 MTA capital program," with any excess dedicated to successor MTA capital programs. *Id.* § 1704-a(1).

A lengthy multi-year environmental review process under the National Environmental Policy Act ("NEPA") ensued, culminating in a 958-page (plus thousands of pages in appendices) final Environmental Assessment ("EA"), along with a Finding of No Significant Impact issued in June 2023. In November 2023, the TMRB issued a report recommending a toll structure, relying on the EA's findings and analysis and seeking to achieve the Program's congestion-reduction and revenue-raising aims, while "keeping the base tolls as low as possible, avoiding unnecessary traffic diversions, [and] supporting equity goals and environmental justice." TMRB at 7; *see also id.*, at 31.[4] One of the TMRB's key recommendations was to keep the Program "simple," "easy to understand," and "easy to administer," and so it recommended tolling vehicles "only for entering the CBD" and "not for

---

[4] Citations to "TMRB" are to pages of the Traffic Mobility Review Board's Report, *available at* https://new.mta.info/document/127761, "Toll Rate Sched." refers to pages of the toll rate schedule adopted by TBTA in November 2024, *available at* https://new.mta.info/document/138931; and "EA" are to the Final Environmental Assessment, Appendix A - Final Environmental Assessment, *available at* https://new.mta.info/project/CBDTP/environmental-assessment. The Court may take judicial notice of public documents, and of documents that are publicly available on a party's website, the authenticity of which is not in dispute. *See* R.A. 89 n.2; *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 65 & n.2 (2d Cir. 2021); *Brown v. N.Y.C. Transit Auth.*, No. 22 Civ. 2949, 2024 WL 1347283, at *6 (S.D.N.Y. Mar. 29, 2024).

remaining within or leaving it," which is "consistent with how most tolling systems normally work in the United States." *Id.* at 7, 15.

In November 2024, TBTA adopted a phased-in toll rate schedule, which includes the toll rates proposed by the TMRB phased in gradually over the next six years, with passenger vehicles currently charged $9; the final phase will impose toll rates equivalent to those recommended by the TMRB. Toll Rate Sched. at 1; TMRB at 8.[5] The Program includes certain discounts, consistent with its aim of reducing congestion and promoting equity. For example, tolls are reduced by 75 percent during nighttime hours. Toll Rate Sched. at 2. The Program provides additional discounts in the daytime in the form of crossing credits for vehicles directly entering the CBD from tunnels that are already tolled, such as the Lincoln and Queens-Midtown Tunnels, and allows for discounts for frequent drivers with low incomes. *Id.* at 1.

## B. Procedural History

Rockland filed its complaint on March 26, 2024 and filed its operative amended complaint on May 13, 2024. R.A. 5, 15. Orange commenced its action on May 23, 2024 and filed its operative complaint on May 28, 2024. O.A. 3, 11. Both

---

[5] The other current tolls are $4.50 for motorcycles, $14.40 or $21.60 for larger vehicles including transit and commuter buses and trucks, depending on their size, $0.75 per trip for taxis, and $1.50 per trip for for-hire vehicles. *Id.* Unlike personal vehicles, taxis and for-hire vehicles are tolled for all trips with passengers that originate in, pass through, or end in the CBD. Toll Rate Sched. at 1. Those passengers pay the tolls.

Rockland and Orange allege that the Program violates the equal protection clauses of the United States and New York constitutions, and that the Program's tolls are an "unauthorized tax" under the New York Constitution. R.A. 23-24, 27; O.A. 19, 21. Orange separately alleges that the Program runs afoul of the right to travel protected by the United States Constitution. O.A. 18. Rockland also asserted a claim, untethered to any cognizable cause of action, that TBTA had failed to consider crossing credits for the George Washington Bridge, in contravention of the TMA. R.A. 24-25. Finally, Rockland alleges that the Program tolls constitute an excessive fine in violation of the Eighth Amendment. *Id.* at 26.

After electing not to amend their complaints further despite being given the opportunity to do so, R.A. 92-93, on December 6, 2024, Rockland and Orange moved for preliminary injunctions to bar the MTA and TBTA from implementing the Program as scheduled on January 5, 2025. R.A. 10; O.A. 7. On December 23, the district court denied both motions in a comprehensive bench ruling, holding that they had "shown neither likelihood of success on the merits nor irreparable harm." R.A. 84. On January 2, 2025, just three days before the Program was scheduled to begin, Rockland moved in this Court for an "emergency stay" and a preliminary injunction pending appeal. *County of Rockland*, No. 24-3325, Dkt. No. 10. On January 3, Judge Sullivan denied Rockland's motion in a short order, pending review by a three-judge panel. *Id.*, Dkt. No. 22. This Court then heard argument on January

7

21 and denied Rockland's motion on January 28, 2025. *Id.*, Dkt. No. 31. Over two months later, on March 31, Rockland filed an application for an emergency stay at the United States Supreme Court, which was denied by Justice Sotomayor on April 8, 2025. *Cnty. of Rockland v. Metro. Transp. Auth.*, No. 24A945 (S. Ct. Apr. 8, 2025) (Sotomayor, J., in chambers).

On July 14, 2025, Judge Seibel granted Defendants-Appellees' omnibus motion to dismiss Rockland and Orange's amended complaints. R.A. 116. That decision, the subject of this appeal, concluded that Plaintiffs-Appellants had failed to plausibly allege any of their claims, *id.*, and noted that both Rockland and Orange have not "suggested that they are in possession of facts that would cure the deficiencies identified in this decision." *Id*. 115. As a result, the court *sua sponte* declined to grant leave to amend. *Id.*

## STANDARD OF REVIEW

This Court reviews "*de novo* a district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiffs." *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). "[N]aked assertions" or conclusory statements are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In addition, the Court "may take judicial notice of public records," including its own prior decisions. *Lynn*

*v. McCormick*, 2017 WL 6507112, at *4 (S.D.N.Y. Dec. 18, 2017), *aff'd*, 760 F. App'x 51 (2d Cir. 2019).

A district court's decision to permit or deny leave to amend a complaint is generally reviewed for abuse of discretion. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015).

## SUMMARY OF ARGUMENT

Plaintiffs-Appellants have fallen woefully short of stating any valid constitutional or statutory claim. As for Orange's right to travel claim, the Program's tolls (like tolls generally) are not subject to strict scrutiny and do not represent more than a "minor restriction" on travel. Plaintiffs-Appellants fail to carry their "heavy burden" to allege any basis for a violation of the Equal Protection Clause given that the Program is subject to the most deferential form of rational basis review. In arguing that the Program's tolls constitute an "excessive fine," Rockland fails to allege that driving a car into the CBD is a crime or that a $9 charge is *per se* unconstitutionally excessive. For similar reasons, Plaintiffs-Appellants have failed to establish that the toll authorized by the TMA is actually an "unauthorized tax." Finally, Rockland waived its right to insist that the MTA must engage in further study of possible offsets for bridge tolls, and that claim would be meritless in any event. Nor was it an abuse of discretion for the district court to deny further additional amendment given the procedural history of the case.

9

## ARGUMENT

### I. The Program does not violate the right to travel

#### A. Strict scrutiny does not apply

Not surprisingly, Orange fails to establish that the Program is subject to strict scrutiny in connection with the right to travel. Orange Br. 5-8. As the district court recognized, "[a] state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." R.A. 95 (quoting *Att'y Gen. of N.Y. v Soto-Lopez*, 476 U.S. 898, 903 (1986)).

By contrast, "minor restrictions on travel," like the tolls at issue here, "do not amount to the denial of a fundamental right." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (internal citations omitted); *accord Weisshaus v. Port Auth. of N.Y. & N.J.*, 497 F. App'x 102, 104 (2d Cir. 2012) (summary order).[6] For this reason, "courts in this Circuit have uniformly held that tolling programs," like the Program here, do not trigger strict scrutiny. R.A. 96; *see also Janes v. Triborough Bridge & Tunnel Auth.*, 977 F. Supp. 2d 320, 332-36

---

[6] Orange already conceded below, in a pre-motion letter, that the Program should be evaluated under rational basis review. *See* R.A. 60. Although Orange now argues that the Program uses a classification to penalize the right to travel, Orange Br. 6-7, that argument was waived, *see Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006), and also fails for the reasons below. And while Rockland suggests that its Equal Protection claim was *actually* a right to travel claim, Rockland Br. 8, Rockland's Amended Complaint does not once mention the "Right to Travel." R.A. 23-24. Further, Rockland conceded at the district court that its Equal Protection claim was subject to rational basis review in any event. *See* R.A. 67-68.

(S.D.N.Y. 2013), *aff'd*, 774 F.3d 1052 (2d Cir. 2014) (per curiam), *cert. denied*, 577 U.S. 914 (2015). *Cf. Weisshaus*, 497 F. App'x at 104.

While Orange argues that the Program creates an incentive for commuters to shift their method of transportation, Orange Br. 5, as the district court reasoned, "travelers do not have a constitutional right to the most convenient form of travel," and thus "burdens on a single mode of transportation do not implicate the right to interstate travel," R.A. 96-97 (quoting *Weisshaus*, 497 F. App'x at 104; *Town of Southold*, 477 F.3d at 54). Orange's assertion that the district court erred in assuming that drivers have "the choice of multiple modes of transportation into the CBD" is plainly incorrect. Orange Br. 7. As the district court recognized, the argument that residents of Orange County don't have a one-seat train option into the CBD is irrelevant since "they concede that alternative modes of travel exist." R.A. 97; *see also* R.A 91 n.6 ("Plaintiffs do not provide any information regarding bus service available in the Counties."). While Orange now asserts that driving into Manhattan is "often the only viable mode," Orange Br. 7, there is no "viability" requirement under the constitutional right to travel; driving into the CBD is still an option for travel (while paying the toll), as is taking mass transit (even if commuters would prefer not to). As Judge Seibel pointed out, "a $9 charge to enter the central business district in one of the most expensive cities in the world, especially where alternative

11

modes of transportation exist, simply does not present more than a minor restriction on travel." R.A. 97 (citing *Janes*, 977 F. Supp. 2d at 344).

Curiously, Orange cites *Doe v. U.S. Secretary of Transportation*, which held that strict scrutiny did not apply in a situation where the plaintiff had been "forced to refrain from and limit their out of state travel" because of a medical condition. 2018 WL 6411277, at *10 (S.D.N.Y. Dec. 4, 2018); Orange Br. 7. Orange argues that the Program's current $9 toll, imposed after drivers have already paid other (and higher) bridge or tunnel tolls in order to enter Manhattan, is somehow more of a deprivation of the right to travel than being "forced to refrain" from travel altogether. Orange Br. 7-8; *see* O.A. 15 (noting the George Washington Bridge toll is $15). But obviously, this argument makes little sense, and for that reason it has repeatedly been rejected in the reported cases. *See* O.A. 35 (collecting cases).

## B. The Program satisfies *Northwest Airlines*

As the district court recognized, because strict scrutiny does not apply, the appropriate standard of review is the one established by *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 369 (1994). R.A. 96. Under that test, a toll will be upheld if it is: (1) based on a fair approximation of use or privilege for use; (2) not excessive in relation to the benefits conferred; and (3) does not discriminate against interstate commerce. *See Nw. Airlines*, 510 U.S. at 369.

12

With respect to the first factor, as the district court recognized, fair approximation "does not require a perfect fit" between use of a road and a toll; "it simply requires reasonableness." R.A. 62 (quoting *Janes*, 977 F. Supp. 2d at 339); O.A. 76 (*quoting Chan v. U.S. Dep't of Transp.*, 782 F. Supp. 3d 39, 73 (S.D.N.Y. 2025)). Orange argues that the Program's tolls are unreasonable because there is no direct connection between "the fee and the use of the facility." Orange Br. 9. But that ignores the fact that "Orange County residents who choose to drive into the CBD will benefit from the reduced traffic congestion that will result from improvements to the mass transit system" as well as the reduction in the number of vehicles entering the CBD incentivized by the imposition of the tolls. R.A. 102.

In *Angus Partners LLC v. Walder*, cited by Orange, Orange Br. 9, the court considered and rejected claims that toll revenues from bridges and tunnels being allocated to the MTA were insufficiently connected to the specific bridge or tunnel used by the driver. 52 F. Supp. 3d 546, 564-65 (S.D.N.Y. 2014). The court reasoned that "the availability of mass transit and commuter railways impacts demand and generally mitigates the level of traffic congestion." *Id* at 565. Moreover, "the benefits of reduced traffic congestion, which include lower fuel costs, reduced stress, and more predictable wait times, are conferred to motorists each time they . . . avoid traffic that would occur in the absence of functioning mass transit." *Id.*

13

Orange's effort to distinguish *Angus Partners* on the ground that "you have one large transportation authority [TBTA] transferring funds to another large transportation authority [the MTA]," Orange Br. 9-10, is a distinction without a difference. Here, as in *Angus Partners*, the Program's toll revenues are going to fund the MTA's Capital Projects to improve mass transit overall. While Orange submits that drivers would "probably" prefer to drive on a congested road rather than pay a congestion pricing toll, any particular driver's "preference" is irrelevant and Orange cannot contend that drivers do not receive any benefit at all. *See id.* at 10. Indeed, reduction in traffic for the benefit of drivers was one of the primary reasons for the enactment of the TMA in the first place.

As for the second factor—whether the tolls are excessive in relation to the benefits conferred—Orange argues that the Program fails this test because there are no announced plans to improve rail service to Orange County or to improve roadways in the CBD. *Id.* at 10-11. As the district court concluded, however, that misapprehends the relevant inquiry since "toll payers will enjoy reduced congestion and decreased travel time, and others in the integrated transportation system will enjoy mass transit improvements." R.A. 103. Orange cites *Janes v. Triborough Bridge & Tunnel Auth.*, where an even higher toll necessary to cross the Verrazzano Bridge in order to enter Staten Island, which is otherwise accessible only by boat, was found not to be excessive in relation to the benefit conferred. 977 F. Supp. 2d

at 334. As the district here court properly recognized, "it is fair to consider the benefits that flow from the tolls charged … on the entire transportation system within the New York City area." R.A. 103 (quoting *Janes*, 977 F. Supp. 2d at 341). In other words, it is irrelevant for constitutional purposes that "some of the benefits from the toll will flow to others who use the MTA's transit system," since toll payers will all benefit in "fair relation" to what they pay. R.A. 103-04.

When it comes to the third factor, Orange, a New York State county, has already conceded in its briefing below that the Program does not discriminate against interstate commerce. *Id.* at 99. As the trial court observed, that "is a threshold inquiry and if a policy survives this prong it will have a comparatively easier time passing constitutional muster." *Id*. at 98 (quoting *Angus Partners*, 52 F. Supp. 3d at 560).

## II.    The Program does not violate the Equal Protection or Due Process Clauses

Because the Program does not involve any suspect classification, for purposes of both equal protection and due process, as with the right to travel, rational basis review applies. *United States v. Amalfi*, 47 F.4th 114, 124 (2d Cir. 2022). Under black letter law, rational basis review requires a court to "uphold the classification 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). As the trial court

15

noted, rational-basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." R.A. 108 (quoting *Sensational Smiles*, 793 F.3d at 284). A challenged classification must be afforded "a strong presumption of validity," requiring only "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 319-20.

Here, as the trial court concluded, Rockland and Orange's equal protection and due process arguments challenging the "classification" of cars that enter the CBD as distinct from cars that do not, amount to nothing more than "improper policy disagreements." R.A. 72, 84, 108 (citing *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018)). To reiterate, the stated goals of the Program include reducing congestion in the CBD, decreasing air pollution from cars, and raising revenue for the MTA's mass transit projects. These purposes obviously constitute "legitimate government interests" that are being advanced by requiring vehicles that enter the CBD to pay a toll. R.A. 105.

While Orange (bizarrely) asserts these goals are "invalid" because of the alleged MTA failure to "properly manage its revenue gathering and finances," Orange Br. 17, not only did Orange fail to allege these facts in its Complaint, but rational basis review does not provide a license for courts to "speculate as to whether the statute is unwise or whether the evils sought to be remedied could better have been regulated in some other manner." R.A. 105 (quoting *Spina v. Dep't of*

16

*Homeland Sec.*, 470 F.3d 116, 131 (2d Cir. 2006)). In other words, regardless of Orange's views about the way that the MTA manages its budget, raising revenue is "plainly a legitimate purpose." *USA Baseball v. City of N.Y.*, 509 F. Supp. 2d 285, 303 (S.D.N.Y. 2007); *see also PETA v. Giuliani*, 105 F. Supp. 2d 294, 315 (S.D.N.Y. 2000) ("raising revenue" a legitimate government purpose).

Although Rockland contends that the Program improperly discriminates between motorists whose trips originate outside of the CBD and motorists whose trips originate within the CBD, it does not engage with the district court's careful analysis of why such a classification is rational here. Rockland Br. 6-7. There obviously is a rational basis for charging vehicles when they enter the CBD because that encourages some motorists to utilize public transit instead, thereby reducing congestion. R.A. 106-07. It is also an administratively logical approach to determining when to impose the toll. *Id.* Indeed, in its report recommending the tolls that were ultimately adopted, the TMRB noted that charging a toll upon entering is consistent with how most tolling systems normally work, makes the Program simple and easy to understand, and is the best way to influence drivers' travel decisions in order to reduce congestion. TMRB at 15. Rockland does not (and cannot) dispute any of this. In fact, they do not even try to "negat[e] every conceivable basis which might support" the decision to charge vehicles upon entering the CBD. *Melrose Credit Union v. City of N.Y.*, 247 F. Supp. 3d 356, 366

(S.D.N.Y. 2017), *aff'd sub nom. Progressive Credit Union v. City of N.Y.*, 889 F.3d 40 (2d Cir. 2018). Rockland's suggestion that the Program cannot achieve its goals because there are drivers who are not paying a toll since they only drive and park strictly within the CBD is irrational, given that, among other things, 80% of CBD residents don't even own a vehicle, EA 1-9, and that just 7% of trips entirely within the CBD (including taxis and FHVs, which are of course tolled) are vehicles (as opposed to mass transit or walking/biking), EA 4A-16. It also ignores the basic equal protection principle that classifications need not be drawn even close to perfectly in order to satisfy rational basis review. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979).[7]

## III. The Program's tolls are neither fines nor excessive

Rockland's contention that the Program's tolls constitute an excessive fine under both the New York Constitution and the Eighth Amendment to the United

---

[7] While, Rockland takes issue with the district court relying on facts outside the record, Rockland Br. 10-11, every one of the "facts" Rockland identifies are either part of the record incorporated by reference; judicially noticeable; or merely legal determinations. *See* R.A. 100 n.12 (taking judicial notice of the tunnels' start and end points); R.A. 102-03 n.13 (taking judicial notice of New York City's "geography and the existence of the roadways, bridges, tunnels, subways, commuter trains, buses, and bike paths that comprise New York City's transportation network,"); R.A. 100 (making determination that low-income tax credit is a legitimate local concern); R.A. 102 (making determination that the law was intended to benefit drivers); R.A. 103 (citing Appellants' pleadings for failure to allege that toll revenue will not be used to fund anything outside of New York City's integrated transportation system); R.A. 103-04 (citing Orange's Amended Complaint for Program's impact on emissions); R.A. 105 (acknowledging the intent as articulated in a judicially noticed document that type of toll is efficient and familiar to drivers); R.A. 107 (citing dearth of other practical means to charge a toll in Appellants' own pleadings); R.A. 104 (making determination that toll payers will benefit in fair relation).

States Constitution similarly fails. Rockland Br. 13-14. Under these constitutional provisions, courts use a two-step inquiry: (1) determining whether the excessive fines clause applies at all, and (2) if it does apply, determining whether the challenged fine is unconstitutionally excessive. *See United States v. Viloski*, 814 F.3d 104, 108-09 (2d Cir. 2016).[8]

With respect to the first question of whether the excessive fines clause even applies, the courts consider two additional factors: (1) whether the demand is imposed at the culmination of a criminal proceeding; and (2) the nature of the statute that authorizes the fine. *Beatty v. Gilman*, 718 F. Supp. 3d 166, 185 (D. Conn. 2024) (citing *United States v. An Antique Platter of Gold*, 184 F.3d 131, 139-40 (2d Cir. 1999)). Here, the district court correctly determined that the Program's tolls are not punitive because they are not imposed at the culmination of any proceeding (much less a criminal one). R.A.112. The TMA makes this plain when it explicitly states that it is imposing a *toll*. *Id.* (citing N.Y. Veh. & Traf. Law §§ 1704-a(1); 1704(3)(a)). And Rockland itself acknowledges that the Program's tolls apply to the act of "*legally* driving in the CBD." R.A. 26, ¶ 69 (emphasis added). Given that Rockland fails to address these issues at all, it has waived any argument that the

---

[8] The excessive fine analysis under the New York Constitution and United States Constitution is the same. *Wirth v. City of Rochester*, 2021 WL 3270512, at *2 (W.D.N.Y. July 30, 2021).

excessive fines clause is applicable. *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009) ("Merely mentioning the relevant issue in an opening brief is not enough").

Although Rockland does assert that "none of the toll revenue is returned" to New York City, Rockland Br. 14, that is immaterial under the excessive fine clause. Again, as discussed above, the use of tolling revenue to promote mass transit and thus reduce congestion is a proper remedial purpose. *See supra* at 16-17 . And while Rockland invokes Justice Gorsuch's concurrence in *Tyler v. Hennepin County,* 598 U.S. 631, 649 (2023) (Gorsuch, J., concurring), it ignores the fact that what concerned Justice Gorsuch in his four-paragraph concurrence were "[e]conomic penalties imposed to deter willful noncompliance with the law." 598 U.S. at 649-50. Even if Judge Seibel had been required to consider that concurrence which was signed by only one other Justice (and which Rockland never even cited below), Justice Gorsuch's concern has no relevance here because the Program's tolls are not intended to deter "noncompliance" with the law since driving into the CBD is not illegal. *See* R.A. 113 n.17.

Since the Program's tolls cannot be considered a fine subject to the excessive fines clause, this Court need not reach the "excessiveness" step of the inquiry. *See Viloski*, 814 F.3d at 108; R.A. 113. But even if this Court were to do so, Rockland does not argue in its brief that the tolls are unconstitutionally excessive, and does not grapple with Judge Seibel's decision below noting (without deciding) that even

20

if the toll were a fine, "it likely would not be unconstitutionally excessive." R.A. 113.

## IV. The toll is not an unconstitutional tax

The toll imposed upon entering the CBD is also not a tax that violates the New York Constitution. Under New York law, a tax "is a charge that a government exacts from a citizen to defray the general costs of government unrelated to any particular benefit received by that citizen." *Walton v. N.Y. State Dep't of Corr. Servs.*, 13 N.Y.3d 475, 485 (2009). A toll, by contrast, is "the compensation for the use of another's property, or of improvements made by him." *Carey Transp., Inc. v. Triborough Bridge & Tunnel Auth.*, 38 N.Y.2d 545, 556 (1976) (Cooke, J., concurring) (quoting *Sands v. Manistee River Imp. Co.*, 123 U.S. 288, 294 (1887)). As the district court held, the Program's tolls here are a toll, not a tax, since they are collected only from those persons who drive into the CBD and the revenue generated is used to pay for much-needed infrastructure maintenance and improvements to the New York metropolitan area's transit system.

Rockland cites the case of *Association for Accessible Medicines. v. James*, where this Court cited with approval a three-factor test for distinguishing taxes from regulatory fees: "(1) the nature of the entity imposing the assessment, (2) the population subject to the assessment, and (3) the ultimate allocation or use of the revenues generated by the assessment." 974 F.3d 216, 222 (2d. Cir. 2020). As

21

discussed below, these three factors further illustrate why the Program's tolls do not constitute a tax. *See Gasparo v. City of N.Y.*, 16 F. Supp. 2d 198, 218 (E.D.N.Y. 1998) ("The classic 'tax' is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community.") (internal citations omitted).

With respect to the first factor, Rockland argues that the district court ignored its allegations that the MTA has "police power, taxing authority, bonding authority, the power to buy and sell property establishing parks, [and] engage law enforcement for toll enforcement." Rockland Br. 20. The problem for Rockland, however, is that no such allegations can be found anywhere in Rockland's complaint. But even if these allegations had been made, they are plainly implausible since the MTA was established for the "continuance, further development of commuter transportation and other services related thereto within the metropolitan commuter transportation district." *Angus Partners*, 52 F. Supp. 3d at 551 (citing N.Y. Pub. Auth. Law § 1264). This is precisely the kind of "limited-purpose" public entity that cuts against the classification of the charge as an unconstitutional tax. *Ass'n for Accessible Meds.*, 974 F.3d at 223-24.

As for the second factor, as this Court has noted, the inquiry asks whether the fee is "assessed upon those who ultimately benefit from the very governmental service for which the assessment is earmarked." *Entergy Nuclear Vermont Yankee,*

22

*LLC v. Shumlin*, 737 F.3d 228, 233 (2d Cir. 2013); *see, e.g.*, *Gov. Suppliers Consol. Serv. v. Bayh*, 975 F.2d 1267, 1271 n.2 (7th Cir.1992) (holding that fees imposed on waste-hauling trucks were not taxes because the proceeds were used for the "regulatory" purpose of "implement[ing] the waste disposal regulatory system to which registrants are subject"). Here, as the district court explained, the population subject to paying the Program's toll is not "all citizens," but only instead those persons who drive their vehicle into the CBD and benefit from reduced congestion. R.A. 110. For the same reasons set forth above, *supra* at 14-15, the MTA operates a single integrated transportation system, and motorists who pay the toll upon entering the CBD will directly benefit from improvements to that broader system. *See Chan I*, 2024 WL 5199945, at *26 ("[D]rivers will benefit from the fact that would-be drivers for whom transit become[s] more attractive … will forgo driving, freeing the streets within the CBD and reducing the congestion-related ills of high travel time, low travel-time reliability, and auto collisions.").

While Rockland asserts for the first time that the concept of an integrated transportation system as established in numerous cases[9] should now be abandoned by this Court,[10] Rockland Br. 21-24, even Rockland acknowledges that the

---

[9] *See Chan I*, 2024 WL 5199945, at *26 (collecting cases).

[10] Rockland failed to raise this argument below, even though the argument was available to them both in support of their motion for a preliminary injunction and in opposition to Defendants-Appellee's motion to dismiss. *See* R.A. 63-64. Thus, the argument has been waived. *Bogle-Assegai*, 470 F.3d at 504.

Program's toll revenues support New York's integrated travel network, not the general costs of government. R.A. 27-28. The cases Rockland cites are inapposite. In *Cella v. Suffolk County*, for example, the fees at issue were used to "defray the general cost of government" and thus constituted taxes. 220 A.D.3d 911, 913 (2d Dept. 2023). Here, by contrast, the Program's tolls here are authorized by the TMA, which requires the resulting revenues to be used to support MTA Capital Projects. N.Y. Veh. & Traf. Law § 1701. Likewise, *United States v. U.S. Shoe Corp.*, which involved interpretation of the Export Clause of the Constitution, and *United States v. Sperry Corp.*, which involved the completely different question of whether fees charged by an arbitral tribunal constituted a "taking" under the Fifth Amendment, have no relevance here. 523 U.S. 360, 362-63 (1998); 493 U.S. 52, 63 (1989).

Under the third factor, which the courts have held to be the "critical inquiry" and "predominant factor," *Ass'n for Accessible Meds.*, 974 F.3d at 222-23, the issue of whether a fee can be considered a tax "depends on the disposition of the funds raised," *id.*, as well as whether those funds "serve[] general revenue-raising purposes," *Entergy Nuclear Vermont Yankee, LLC*, 737 F.3d at 231. Here, as Rockland has conceded, the Program's revenue is earmarked for "transit," with money being used to "modernize subways and buses," and improve the "Long Island Railroad" and "Metro-North Railroad." R.A. 20, ¶ 27. That means, of course, that

24

the Program does not serve a "general revenue-raising purpose." *Entergy Nuclear Vermont Yankee, LLC*, 737 F.3d at 231. The fact that the TMA acknowledges that improvements to the transit system could ultimately benefit the "health, safety, and livelihood of commuters" is of no moment, Orange Br. 15, because "[i]t is the actual characteristics of the questioned revenue measure, not posited legislative intent or general political context, that determines its status." *Entergy Nuclear Vermont Yankee, LLC*, 737 F.3d at 231. On top of all that, Rockland and Orange's claims fail for the additional reason that the Program tolls are not, in fact, unauthorized—they have been explicitly authorized by statute. The TBTA promulgated the toll rate schedules in accordance with their delegated authority under the TMA to establish toll rates and charge tolls "[c]onsistent with the goals of reducing traffic congestion within the central business district and funding capital projects." *Chan I*, 2024 WL 5199945, at *41 (citing N.Y Veh. & Traf. Law § 1704-a(1)); *see also Town of Hempstead v. Hochul*, Index No. 450653/2025, NYSCEF No. 125 at 2-4 (June 23, 2025) (Engoron, J.) (finding that TBTA properly promulgated the tolls pursuant to the Act and in accordance with the New York State Administrative Procedure Act).

## V.    Rockland's request for injunctive relief is improper

Rockland asks this Court to require the MTA to engage in further "study [of] a possible offset for bridge tolls paid by Rockland residents for entry into New York County." R.A. 24-25, ¶ 58. But the argument that Rockland is entitled to injunctive

relief is not properly before this Court. As the district court noted, Rockland did not oppose Defendants' motion to dismiss this cause of action. *Id.* at 92 n.7. And a plaintiff who does not oppose arguments in a motion to dismiss cannot raise those arguments later on appeal. *See Jackson v. Scotts Co.*, 356 F. App'x 513, 515 (2d Cir. 2009).

But even if this Court were to consider Rockland's arguments for injunctive relief, they lack merit.[11] Although, Rockland argues that its second cause of action seeking a mandatory injunction is "pled with sufficient particularity," Rockland Br. at 13, "[i]t is well settled that an injunction is a remedy, not a cause of action," *Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*, 737 F. Supp. 3d 195, 211 (S.D.N.Y. 2024). A cause of action, or "the presence before a court of a claim of substantive right," is a "necessary prerequisite to the exercise of judicial power" and Rockland has failed to assert one here with respect to its request for a mandatory injunction for further study. *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 730 (2d Cir. 1993).

---

[11] Indeed, the assertion that Defendants did not study the issue is factually incorrect. The EA included consideration of a tolling scenario that would apply credits for all tolled crossings into Manhattan, including the George Washington Bridge. *See* EA at 2-31, 2-33. The toll structure that was adopted by TBTA was informed by the TMRB's recommendation to limit the number of credits in order to keep the base toll low. TMRB Report at 15. The TMRB also noted: "The credit [given for tolled crossings directly entering the CBD] should not apply to those vehicles driven to the zone indirectly via other tolled crossings, as it would be difficult to administer and would significantly add to the cost of the base CBD toll rates for everyone." *Id.* at 25.

## VI. It was not an abuse of discretion to deny Rockland leave to amend

Finally, where, as here, a district court's decision to deny leave to amend was based on Plaintiffs' previous decision not to amend when given the opportunity to do so, that decision is reviewed for abuse of discretion. *Balintulo*, 796 F.3d at 164. It is well established that denying an opportunity to amend is appropriate where "the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies." *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 559 (S.D.N.Y. 2010). Here, Rockland was not only offered an opportunity to once amend its Complaint, R.A. 33, but declined to do so even after the district court (and Defendants-Appellees) warned them about the weaknesses in their Amended Complaint, R.A. 114. Having failed to have taken advantage of the prior opportunity to amend, Rockland cannot credibly argue that it was an abuse of discretion for Judge Seibel to deny leave to amend at a later stage of the case.

## CONCLUSION

For the foregoing reasons, the orders of the district court dismissing Rockland and Orange's complaints should be affirmed.

27

Dated: New York, New York
       November 12, 2025

Respectfully submitted,

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
Thomas A. Lloyd
KAPLAN MARTIN LLP
1133 Avenue of the Americas,
Suite 1500
New York, New York 10036
(212) 316-9500
rkaplan@kaplanmartin.com
btrice@kaplanmartin.com
mcrema@kaplanmartin.com
tlloyd@kaplanmartin.com

*/s/ Mark A. Chertok*
Mark A. Chertok
Elizabeth Knauer
SIVE, PAGET & RIESEL, P.C.
560 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 421-2150
mchertok@sprlaw.com
eknauer@sprlaw.com

*Attorneys for Defendants-Appellees
Metropolitan Transportation
Authority and Triborough Bridge and
Tunnel Authority*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the length limits requirements of Fed. R. App. P. 27(d)(2) because this brief contains 7075 words, excluding those portions pursuant to Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d) because it was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 14 Times New Roman font.

Dated:  New York, New York
        November 12, 2025

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan

## <u>CERTIFICATE OF SERVICE</u>

I, Roberta A. Kaplan, counsel for Defendants-Appellees and a member of the Bar of this Court, certify that on November 12, 2025, copies of the foregoing brief were filed with the Clerk through the Court's electronic filing system, which will send notice of such filing to all counsel of record.

Dated:  New York, New York    */s/ Roberta A. Kaplan*
   November 12, 2025     Roberta A. Kaplan

30